UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH NEWMAN, as Personal Representative
of the Estate of ALLISON NEWMAN, Deceased,

        Plaintiff,                       No. 07-10158

vs.                                     Hon. Gerald E. Rosen

CHILDTIME CHILDCARE, INC.,

        Defendant.
_____/

OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     August 1, 2008

PRESENT: Honorable Gerald E. Rosen
                United States District Judge

I. INTRODUCTION

Decedent Allison Newman ("Allison") died on or about September 21, 2006 while in the custody of her foster mother Carol Ann Poole ("Mrs. Poole")[1]. Allison's paternal

---

[1] On September 21, 2006, Mrs. Poole played a game with Allison that Mrs. Poole described as "whirly bird" in the upstairs of the Poole's home near the stairwell balcony. She held Allison out in front of her, over her wrist, and spun her around in circles. Mrs. Poole allegedly became dizzy and accidently flung Allison over the railing of the balcony. Allison fell approximately 15 feet onto the wood floor below and fractured her skull. Mrs. Poole did not immediately contact emergency care but put Allison to bed. Later that evening, Mrs. Poole found Allison unresponsive and not breathing whereupon she called an ambulance and Allison was pronounced brain dead at the hospital on September 22, 2006. (*See* Plaintiff's amended complaint and Defendant's brief in opposition to Plaintiff's motion for partial summary judgment). Mrs. Poole was criminally convicted of second degree murder and first degree child

1

grandmother, Plaintiff Deborah Newman [hereinafter Plaintiff], representative of the estate of Allison, brought this action against Defendants Lutheran Social Services of Michigan and two of its employees (referred to collectively as "Lutheran Defendants"), Childtime Childcare, Inc. ("Childtime"), Carol Ann Poole and Alan D. Poole ("Mr. Poole") (referred to collectively as "the Pooles") alleging several causes of action against each party. Plaintiff settled with Lutheran Defendants and the Pooles. Plaintiff alleges the following counts against the remaining Defendant, Childtime: (1) common law and statutory neglect; (2) violation of 42 U.S.C. § 1983; (3) breach of statutory duty of protection under the Michigan Child Protection Act, M.C.L. 722.623 and 722.633 ("CPL"); and (4) negligence[2].

This matter is presently before the Court on Plaintiff's partial motion for summary judgment as a matter of law as to the applicability of the CPL to Defendant Childtime. In this motion, Plaintiff seeks a declaratory judgment from the Court finding that the CPL prohibits a comparative allocation of civil liability between the violator of the CPL

---

abuse for her role in Allison's death and is currently serving that sentence.

[2]On or about July 4, 2006, two months before Allison's death, Allison's lead teacher Cheryl Lynn Majeske ("Majeske") and an assistant teacher, Melissa Fenske Gunn ("Gunn") at Childtime noticed marks on her body during a diaper change. The marks allegedly consisted of 10-20 half-inch marks that the teachers described as scratches on the side and bottom of her buttox. Majeske further observed that Allison had similar marks on her thigh and chest and a bruise on her thigh. When asked about the marks on her buttox, Allison consistently responded that it was "Mommy" who did this. While initially answering that the marks on her chest and thigh were from "Mommy" upon further questioning, she stated that the marks were from "Allison". Majeske and Gunn reported these marks and their concerns to Jacqueline Hadwin ("Hadwin"), the director at Childtime but the concerns were never documented or reported to DHS or CPS. Later, on or about August 2006, Majeske observed bruises on the front and back of Allison's head. Hadwin was again shown these marks but failed to report them to DHS or CPS. Majeske testified that she saw injuries on Allison's body approximately once every three weeks. (*See* exhibit 4 in Plaintiff's second motion for summary judgment for full testimony).

reporting requirements and the perpetrator of child abuse or neglect. Having reviewed and considered the parties' briefs and supporting documents, the Court has determined that oral argument is not necessary. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), this matter will be decided on the briefs. This Opinion and Order sets for the Court's ruling.

## II. DISCUSSION

A. STANDARD OF REVIEW

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.'" Fed.R.Civ.P. 56(c).

Three 1986 Supreme Court cases–*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)–ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion. According to the *Celotex* court,

A. STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion. According to the *Celotex* Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

*Celotex*, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the

record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

Additionally, in *Matsushita*, the Supreme Court held that on summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. 574 at 587. The Court will apply the foregoing standards in deciding Plaintiff's motion for partial summary judgment in this case.

B. APPLICATION OF THE CHILD PROTECTION LAW AND THE MICHIGAN TORT REFORM ACT

The issue presented for summary judgment is whether, as a matter of law, the CPL prohibits a comparative allocation of civil liability between the violator of the CPL reporting requirements and the perpetrator of child abuse or neglect. The resolution of this issue requires an evaluation of whether Michigan's Tort Reform Act ("MTRA") in any way undermines or reduces the specific civil remedies of the CPL. The Court fails to find any tension in the statutory reading of the CPL and MTRA, but rather finds that the CPL and the MTRA can be readily harmonized.

The CPL states that "A...school counselor or teacher...or regulated child care provider who has reasonable cause to suspect child abuse or neglect shall make immediately, by telephone or otherwise, an oral report, or cause an oral report to be made,

5

of the suspected child abuse or neglect to the department." MICH. COMP. LAWS ANN. § 722.623. Additionally, the CPL provides that "a person who is required by this act to report an instance of suspected child abuse or neglect and who fails to do so is civilly liable for the damages proximately caused by the failure." MICH. COMP. LAWS ANN. § 722.633.

> Section 600.2957 of the MTRA provides, in pertinent part,
>
> In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each person shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been, named as a party to the action.

MICH. COMP. LAWS ANN. § 600.2957(1).

In Plaintiff's brief supporting her motion for partial summary judgment, Plaintiff interprets the CPL to assign all liability to the non-reporter without regard to the liability of the abuser. (Pl.'s Br. Summ. J. 2). Plaintiff reasons that a comparative allocation of liability would undermine the remedial purpose of the CPL. *Id.* Plaintiff contends that if the MTRA is applied to CPL reporting violations, it would allow the non-reporter to hide behind the liability of the abuser rendering the CPL nugatory. *Id.* at 7. Plaintiff accordingly asks this Court to determine as a matter of law that Childtime be apportioned several liability separately from Mrs. Poole, the perpetrator of the child abuse. *Id.* at 2. Plaintiff further contends that for the CPL to have continuing vitality the apportionment of damages must be completely separate from any other Defendant. *Id.*

The outcome of Plaintiff's partial motion for summary judgment hinges on the statutory interpretation given to the CPL and MTRA. This Court finds Plaintiff's interpretation of the CPL and the MTRA at odds with the statutory construction of these statutes.

As the Michigan Court of Appeals observed in *Williams v. Coleman*, 194 Mich. App. 606, 488 N.W.2d 464, 472 (1992), the CPL was enacted as an attempt to protect children from abusive or neglectful conduct. The reporting provisions of the CPL require specific classes of professionals, including teachers or childcare providers, to report instances of suspected child abuse or neglect and imposes civil damages upon those who fail to do so. 488 N.W.2d at 468; MICH. COMP. LAWS ANN. § 722.633. In its brief opposing Plaintiff's motion, Childtime contends that while the CPL reporting provisions create a private cause of action, they do not, on their face, impose strict or absolute liability on a non-reporter. (D's Br. Opp'n. 8). Rather, Childtime argues that the CPL reporting provision holds a non-reporter civilly liability for damages proximately caused by its failure to report *Id.*

This Court finds the discussion in *Williams* a helpful guide in this case in interpreting the pertinent provisions of the CPL. In *Williams*, the sister of a child who died as a result of long-term nutritional deprivation brought an action against social workers alleging that their failure to report complaints of suspected neglect was the proximate cause of the child's death. *Williams*, 488 N.W.2d at 466. The court held that the trial court properly instructed the jury that if it found that the defendant was negligent,

then it must decide if that negligence was a proximate cause of the child's death. *Id.* at 472. The court reasoned that the evidence presented at trial supported a finding that the failure to report the suspected neglect -- which would have initiated an investigation and possible removal of the child from her mother -- could have been a proximate cause of the child's death. *Id.*

Applying the reasoning in *Williams*, while it may be possible to hold Defendant Childtime liable for the death of Allison, a jury must make a determination that Allison's death was proximately caused by Childtime's failure to report the suspected abuse. This falls far short of requiring a determination as a matter of law that Childtime is severally liable separate and apart from Defendant Poole, the perpetrator of the child abuse. Thus, pursuant to the CPL, Childtime is to be held liable only for any damages proximately caused by its failure to report.

Similarly, the MTRA apportions damages "in direct proportion to the person's percentage of fault." MICH. COMP. LAWS ANN. § 600.2957(1). The MTRA requires the jury to determine the total amount of Plaintiff's damages arising from the conduct alleged in the complaint and then allocate the liability among all remaining defendants, former defendants, and non-parties and apportion damages in direct relation to each parties' percentage of fault. MICH. COMP. LAWS ANN. § 600.6304. The tort reform statutes are designed to allocate fault and responsibility for damages among multiple tortfeasors. Plaintiff contends that in tort actions, according to the MTRA, liability is several and not joint, and the trier of fact must assess and allocate a percentage of fault to each person in

direct proportion to that person's responsibility for the injury. (Pl.'s Br. Summ. J. 13).

The Michigan Supreme Court in *Kaiser v. Allen*, 480 Mich. 31, 746 N.W.2d 92 (2008), provided a detailed analysis of the purpose and interpretation of the MTRA. *Kaiser* held that the purpose of the MTRA is to hold each tortfeasor liable only for the portion of the total damages that reflects that tortfeasor's percentage of fault. 746 N.W.2d at 95. The Court reasoned that the MTRA is designed to allocate fault and responsibility for damages among multiple tortfeasors and has abolished joint and several liability in cases in which there is more than one tortfeasor actively at fault. *Id.*

Therefore, under both the CPL and the MTRA, the jury will be required to determine the damages proximately caused by Defendant Childtime. In so doing, it is possible that jury could find Childtime liable for all or only a lesser percentage of Plaintiff's damages.

## III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff's May 15, 2008 motion for partial summary judgment as a matter of law pursuant to Fed.R.Civ.P. 56 (a), (c) and (d)(2) **[Dkt. No. 69]** is DENIED.

        s/Gerald E. Rosen
        Gerald E. Rosen
        United States District Judge

Dated:  August 1, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 1, 2008, by electronic and/or ordinary mail.

        s/LaShawn R. Saulsberry
        Case Manager